**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David POINDEXTER (94–5065)**
**and Derrick Taylor (94–5066),**
**Defendants–Appellants.**

**Nos. 94–5065, 94–5066.**

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 19, 1994.

Decided Jan. 13, 1995.

Tony R. Arvin, Asst. U.S. Atty. (briefed), Office of the U.S. Atty., Memphis, TN, for plaintiff-appellee.

James D. Wilson (briefed), Memphis, TN, for David Poindexter in No. 94–5065.

Before: SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

In this consolidated appeal, defendants David Poindexter and Derrick Taylor challenge their jury convictions and sentences for various crimes arising out of their robbery of the Bank of Mason, Mason, Tennessee, on April 24, 1992.

## I.

Derrick Taylor and David Poindexter are brothers. On April 24, 1992 they entered the Bank of Mason; and, brandishing pistols, ordered the bank tellers to put money from the teller drawers into pillowcases they had brought. Defendant Taylor also forced the bank's president to open the bank vault. Defendants then made all the bank employees lie on the floor as they left the bank building. As they departed, the duo removed their ski masks, and got into a four-door, blue Chevrolet Caprice, bearing license plate MRC–931, and drove off.

Defendants led a string of police officers on a high speed chase from Mason to Millington, Tennessee, and ultimately to the Millington Naval Air Station, about fifteen or twenty miles from Mason. When defendants reached Millington, Taylor, the driver, turned onto Bethuel Road, driving in a northerly direction. Bethuel is a two-lane road that runs along the eastern edge of Millington Naval Air Station. A Chevy Lumina and a pickup truck were traveling ahead of defendants in the same direction. As defendants, driving north in the south-bound lane, attempted to pass the slower-moving cars in the left-hand lane, they broadsided the Chevy Lumina as it was making a left-hand turn into the naval housing area. The collision pushed the Lumina into a large tree. The driver, Trevor McCracken was critically injured in the crash and died several days later.

The pickup truck, which had been directly behind McCracken's car, pulled over to offer assistance. Defendants, who had left their now wrecked Chevrolet, ran up to the pickup truck with their guns drawn. Taylor ran to the driver's side, where Matt Wagner was seated, and Poindexter ran to the passenger's side, occupied by Ray Morgan. When Wagner attempted to put his truck in reverse, defendant Taylor shot through the driver's door window, shattering it. The single shot struck Wagner; and the broken glass struck Morgan. Wagner drove off after being shot. He later lost a kidney as a result.

At this point, Millington police officers arrived. Defendants ran into the Navy base's family housing area. They came upon a woman, Christine Romero Brock, who was out on her back porch with her two children. Defendants told Brock that they had been in an accident. She offered to call an ambulance and moved toward her back door. Defendants seized Brock and forced her into the house with them. Defendants held Brock and her son hostage in the house for approximately half an hour. Her one-year old daughter was left outside alone.

The officers followed a trail of defendants' blood to Brock's porch, and surrounded the home. Moments later they burst inside and arrested defendants. Defendants were wearing the same clothes they had on during the robbery. The stolen money was found scattered in the base housing area. Defen-

dant Poindexter's .38 pistol was found in a closet of Brock's home.

The superseding indictment charged defendants Taylor and Poindexter with armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count 1); both defendants with killing a person in avoiding and attempting to avoid apprehension for the bank robbery, in violation of 18 U.S.C. § 2113(e) (Count 2); defendant Taylor with using and carrying a firearm during the bank robbery, in violation of 18 U.S.C. § 924(c) (Count 3); defendant Poindexter with using and carrying a firearm during the robbery, in violation of 18 U.S.C. § 924(c) (Count 4); both defendants with assault with intent to commit murder within the special territorial jurisdiction of the United States, in violation of 18 U.S.C. §§ 7(3) and 113(a) (Count 5); both defendants with assault with a dangerous weapon with intent to do bodily harm within the special territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(c) (Count 6); both defendants with unlawfully seizing and abducting a person within the special territorial jurisdiction of the United States, in violation of 18 U.S.C. § 1201 (Count 7); both defendants with carrying and using a firearm during the kidnapping referred to in Count 7, in violation of 18 U.S.C. § 924(c) (Count 8); and defendant Taylor with receiving a firearm while being under indictment, in violation of 18 U.S.C. § 922(h) (Count 9). A jury convicted Taylor on Counts 1, 2, 3, 5, 7, 8 and 9, and acquitted him on Count 6. Poindexter was convicted on Counts 1, 2, 4, 6, 7 and 8, and was acquitted on Count 5. Both defendants were sentenced to a term of life imprisonment plus twenty-five years.

## II.

Defendants raise a number of issues on appeal relating to both their convictions and sentences. As for the challenges pertaining to the convictions, we find that only one issue merits discussion. We will also address the sentencing issues.

## A.

■ Both defendants argue that the district court committed reversible error by instructing the jury that the government need not show that defendant intended to kill the person in order to establish a violation of 18 U.S.C. § 2113(e). The statute provides:

> Whoever, in committing any offense defined in this section [bank robbery], or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, *kills* any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

18 U.S.C. § 2113(e) (1984) (emphasis added). Over objection of both defendants, the district court instructed the jury on the third element of the statute as follows:

> With respect to the third element the government must show that the defendant killed a person in avoiding or attempting to avoid apprehension for the offense. In order to establish this element the government need not show that a defendant intended to kill the person, but merely that he intended to avoid apprehension, and by his acts in avoiding or attempting to avoid apprehension, caused the person's death.

■ This is an issue of first impression in this circuit and elsewhere. Nevertheless, we are not left without legal resources:

> A well settled rule of statutory interpretation directs the court in the first instance to examine the language of the statute. "[O]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language. When we find the terms of a statute unambiguous, judicial inquiry is complete, except in 'rare and exceptional circumstances.'"

*United States v. Johnson,* 855 F.2d 299, 305 (6th Cir.1988) (quoting *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)). Black's Law Dictionary explains that "to kill" is "[t]o deprive of life; to destroy the life of an animal or person. The word 'homicide' expresses the killing of a

human being." Black's Law Dictionary 870 (6th ed. 1990). The common understanding of the word "kill," in contrast with the term "murder," which is defined as "[t]he unlawful killing of a human being by another with malice aforethought, either express or implied," *id.* at 1019, does not include an element of scienter. Because the plain language of the statute says simply "kills," and not "intentionally kills" or "murders," the settled principles of construction direct us to conclude that the legislature did not intend to add an additional scienter requirement to the killing component of the crime. *Cf.* 18 U.S.C. § 1111(a) ("Murder is the unlawful killing of a human being with malice aforethought.").

This conclusion is bolstered by the fact that at the time § 2113(e) was enacted, the common law felony murder doctrine was well-established. *See generally,* LaFave & Scott, *Substantive Criminal Law,* § 7.5 (1986). Thus, we think resort to the legislative history unnecessary. Nonetheless, we note that the report of the House Committee uses both the word "murder" and "homicide," *see* H.R.Rep. No. 1461, 73d Cong., 2d Sess. 3 (1934), the latter of which can be intentional or unintentional. *See* Black's at 734. It is therefore inconclusive.

### B.

■ Defendant Taylor presents several challenges to his sentence. First, he argues that the district court erred in adding 6 points to his base offense level on Counts 1 (18 U.S.C. § 2113(a), (d)), and 5 (18 U.S.C. §§ 7(3) and 113(a)), under guideline sections 2B3.1(b)(3)(c) (Nov. 1993) and 2A2.1(a)(1) (Nov. 1993), respectively. Taylor asserts that while Matthew Wagner did suffer serious injuries as a result of the shooting, there was no testimony at sentencing that the inju-

ries had a disabling effect on his life or left him permanently disfigured. Thus, Taylor suggests we find that he should have received no more than a 2–point enhancement for "bodily injury" under § 2B3.1(A), as defined in paragraph 1(b) of the Commentary to § 1B1.1. This contention is without merit. Wagner testified at trial that he lost a kidney as a result of the shooting and spent more than a month in the hospital. This clearly constitutes a "loss or substantial impairment of the function of a bodily ... organ, ..." under the definition of "permanent or life-threatening bodily injury." *See* § 1B1.1, comment. (h).

■ Next, Taylor contends that the district court erred in setting his base offense level at 43 pursuant to § 2A1.1. Taylor argues that § 2A1.1 is inapplicable because he did not commit first degree murder, as defined in 18 U.S.C. § 1111(a).[1] It is true that § 2A1.1, the first degree murder guideline, is referenced to 18 U.S.C. § 1111, the murder statute, which defines murder as "the unlawful killing with malice aforethought...." § 1111(a).

Application note 1 to that guideline section answers this question. It states in relevant part that "[t]he Commission has concluded that in the absence of capital punishment life imprisonment is the appropriate punishment for premeditated killing. *However, this guideline also applies when death results from the commission of certain felonies.*" § 2A1.1, comment. (n. 1). The statutory index to the guidelines references guideline sections 2A1.1 (first degree murder) and 2B3.1 (robbery) for the violations of § 2113(e). *See* U.S.S.G.App. C. Further, § 2B3.1(1)(c) states that "[i]f the victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had

---

1. 18 U.S.C.A. § 1111 (West Supp.1994) provides:
   (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnaping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully

and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
   Any other murder is murder in the second degree.
   (b) Whoever is guilty of murder in the first degree, shall suffer death unless the jury qualifies its verdict by adding thereto "without capital punishment", in which event he shall be sentenced to imprisonment for life;

   .    .    .    .    .

such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 . . . ."

■ Defendant complains that he incorrectly received a base offense level of 28 pursuant to guideline § 2A2.1(a)(2) for Count 5, rather than 22 under § 2A2.1(a)(1).[2] We disagree. Section 2A2.1(a)(1) specifies that it applies "if the object of the offense would have constituted first degree murder" under 18 U.S.C. § 1111. Under the statute, first degree murder includes "[e]very murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery. . . ." 18 U.S.C. § 1111(a). Defendant's conduct clearly fits this definition.

Defendant's final challenge to the district court's refusal to grant him a reduction for acceptance of responsibility is meritless.

### C.

Defendant Poindexter contends that the district court erred in sentencing him to life on Count 7 (18 U.S.C. § 1201). Because defendant concedes that the argument is moot if he is found properly convicted of Count 2, we need not further address this argument.

### III.

We have reviewed the remaining issues raised by defendants and determined that they do not warrant discussion. In summation, we **AFFIRM** the defendants' judgments of convictions as well as their sentences.

---

**2.** U.S.S.G. § 2A2.1., *"Assault With Intent to Commit Murder; Attempted Murder,"* provides:
  (a) Base Offense Level:
    (1) 28, if the object of the offense would have constituted first degree murder; or
    (2) 22, otherwise.
  (b) Specific Offense Characteristics
    (1) (A) If the victim sustained permanent or life-threatening bodily injury, increase by 4 levels; (B) if the victim sustained serious bodily injury, increase by 2 levels; or (C) if the degree of injury is between that specified in subdivisions (A) and (B), increase by 3 levels.
    (2) If the offense involved the offer or the receipt of anything of pecuniary value for undertaking the murder, increase by 4 levels.