UNITED STATES of America

v.

Yohann Renwick NELSON.

No. 3:95–00084.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 8, 1996.

Carl Douglas Thoresen, Federal Public Defender's Office, Nashville, TN, for Yohann Renwick Nelson.

Mercedes C. Maynor–Faulcon, Office of the United States Attorney, Nashville, TN, for U.S.

## MEMORANDUM AND OPINION

WISEMAN, Senior District Judge.

On August 16, 1995, two men walked into the Citizens Bank, 2013 Jefferson Street, Nashville. They wore masks and carried loaded 9mm semi-automatic pistols. They announced their intention to rob the bank. They pointed their weapons at a bank teller and ordered those inside to the floor. Before they could complete their plan, an off-duty Nashville police officer working as a security guard shot and killed one of the masked men, Terrance Hogan. The other would-be robber ran away.

The United States now charges Yohann Renwick Nelson as the surviving thief-to-be. Nelson's indictment charges him with four crimes: attempted bank robbery with a dangerous weapon; attempted bank robbery with a forced accomplice; attempted bank robbery resulting in a death; and use of a firearm in committing a violent crime.

Nelson has moved the Court to dismiss counts two and three. Nelson claims the Constitution bars the Government's attempt to charge him in Count Three with attempted bank robbery resulting in death. He also argues Count Two should be dismissed for lack of evidence.

### DEFENDANT'S MOTION TO DISMISS COUNTS 2 & 3

In Count 2, The Government accuses Nelson of violating 18 U.S.C. § 2113(e) by forc-

ing Hogan to accompany him in the attempted robbery of the Citizens Bank. Conviction on this count carries a minimum penalty of ten years imprisonment. Count 3 also alleges that Nelson violated § 2113(e) and that "as a result the death of said Terrance Hogan occurred." If convicted of Count 3, Nelson faces life in prison.

In pertinent part, Section 2113(e) provides: Whoever, in committing any offense defined in this section ... kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

18 U.S.C. § 2113(e).

### Count 2: Forced Accompaniment

Count 2 of the indictment alleges Nelson "did force Terrance Hogan to accompany him without the consent of said Terrance Hogan. In violation of Title 18, United States Code, Section 2113(e)." Nelson's motion raises the question of the meaning of the statutory phrase "forces any person to accompany him without the consent of such person." The Sixth Circuit has addressed the meaning of this language once:

The statutory language itself suggests that part of the congressional purpose was to provide protection to those who aid law enforcement in apprehension of bank robbers, by providing a federal penalty for anyone who kidnapped or killed such a person. Further, the statute clearly envisages making it a federal crime to kill or kidnap anyone in an attempt to escape arrest or imprisonment for bank robbery.

United States v. Etheridge, 424 F.2d 951, 962 (6th Cir.1970).

Etheridge's references to kidnapping are in keeping with the traditional interpretation of § 2113(e). Most courts considering the question have held that "force" tracks the elements of the federal kidnapping statute, 18 U.S.C. § 1202. United States v. Marx, 485 F.2d 1179, 1186 (10th Cir.1973); United States v. Sanchez, 782 F.Supp. 94, 95 (C.D.Cal.1992). These courts have examined the legislative history of the 1934 bank robbery act and found "it was enacted to combat the multitude of murders and kidnappings occurring during attempts by bank robbers to flee the scene of the crime." Marx, 485 F.2d at 1186.

More recently, the Seventh Circuit has rejected the kidnapping analogy, holding "there is nothing in the text of the statute that requires that the element of a federal kidnapping or any other crime be satisfied. The statute simply requires what it says: forced accompaniment without consent." United States v. Davis, 48 F.3d 277, 279 (7th Cir.1995).

Both interpretations have led to bizarre results.

In Davis, the defendant pointed a gun at a teller in a credit union parking lot and forced her to open the building so he could rob it. Rejecting the kidnapping analogy, the Seventh Circuit said this satisfied § 2113(e) and affirmed his conviction. Id. at 278–79. In Sanchez, the defendant held a knife to a bank teller's throat for approximately 10 seconds while he moved through the bank to make his escape. Applying the kidnapping analogy, Judge Tashima found no violation of § 2113(e) and acquitted the defendant in a bench trial. Finally, in Marx, the defendants forced their way into a bank president's home, tied one bomb to his chest and another under a bed to which the president's family was tied. They then forced the president to go to his bank and cash a forged cashier's check. Applying the kidnapping analogy, the Tenth Circuit found no violation of § 2113(e) and reversed the defendant's convictions. Marx, 485 F.2d at 1181–82, 1186.

Marx clearly points out the problem inherent in trying to tie one standard of criminal conduct to another. No review of the facts of that case can lead a reasonable person to any conclusion other than the bank president was forced without his consent to accompany the thieves and follow their instructions. Yet, as the Tenth Circuit held, Marx' facts did not fit the federal kidnapping statutory requirement of an "unlawful seizure and holding followed by interstate transportation." Marx, 485 F.2d at 1186. Under some sets of facts, the kidnapping analogy might

be appropriate. In this case, however, the defendant is not charged with kidnapping a hostage "in an attempt to escape arrest or imprisonment for bank robbery." *Etheridge*, 424 F.2d at 962. Instead, the government alleges he coerced a member of his own street gang to assist him in robbing a bank, with proceeds presumably split between the two would-be robbers. *Marx* illustrates why, in this case, the kidnapping test is unwieldy and inappropriate.

■ The more appropriate definition of forced accompaniment without consent in 2113(e) cases is the test the Sixth Circuit already applies when a criminal defendant asserts a duress defense. "To provide a legal excuse for any criminal conduct . . . the compulsion must be present and immediate and of such a nature to induce a well-founded fear of impending death or serious bodily injury." *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir.1984). This duress definition serves three useful purposes:

1. It permits the enhanced penalties of § 2113(e) to come into play when a bank robber forces someone to unwillingly aid in his theft or flight.

2. It provides a workable test with which courts are already familiar.

3. Finally, it places the proper fact-finding focus on both the actions of the compeller ("force") and the response of the compellee ("without the consent"), more closely tracking the terms of the statute than the kidnapping analogy.

In this case, the Government apparently plans to offer no evidence that Nelson physically forced Hogan, by use or threat of immediate violence, to participate in the Citizens Bank robbery. Instead, the Government says in its pleadings it will offer proof that Nelson threatened Hogan with reprisal from his fellow gang members if he didn't go along with the robbery.

As evidence, the Government has proffered a videotaped interview Nelson gave Nashville police the day of his arrest. Nelson admits in the interview that he and Hogan belonged to the same Los Angeles-based gang, the Rolling '90s. Nelson states that he happened upon Hogan in Nashville soon after arriving in town and that within two weeks, they attempted the Citizens Bank robbery.

The interview is, however, inconclusive as to the allegation of forced accompaniment. At the beginning of his confession, Nelson immediately volunteers that "I made him [Hogan] go with me, man. I made him go. He didn't want to do it at first." He later offered:

NELSON: I forced him to come with me. He didn't want to come.

OFFICER: What do you mean, you forced him? Forced him from where?

NELSON: You know, I made him. I'm like, you wanna make some f---in' money, you know what I'm saying? I'm the one who forced the issue up on him to go, you know, go up there, get us some money so we could get back to California.

. . . .

OFFICER: Well, how did you force him? You couldn't really force him.

NELSON: Well, I told him, you know, you don't go in there and do this bank with me, you know, we get back where we staying at, you know, I'll have the homies rush you and beat you up.[1] He didn't wanna go back with that type, you know, that type of jacket on, his jacket, you know what I'm saying?

OFFICER: OK, so you more or less threatened him?

NELSON: Mmm-hmm.

These statements, however, are contradicted by other statements Nelson makes in the same interview. First, Nelson says Hogan alone voluntarily procured the guns and the getaway car for the robbery and that Hogan drove the car to the Citizens Bank because Nelson couldn't drive the straight-shift vehicle. Though Nelson says he placed Hogan in front of him as they entered the bank, he also says Hogan carried a loaded 9mm pistol, just as he did, and that the robbery plan

---

**1.** The Government indicates it plans to call a Los Angeles police detective as an expert witness to "define the term 'force' as it relates to gang activity and gang relationship of street crimes, i.e., crips."

called for Hogan alone to be armed while Nelson gathered the bank's cash into a plastic bag. Further, it appears from the interview that Nelson is unaware that Hogan is dead ("You know, I'm gonna take all the blame for all that sh--, you know. Is he shot bad?"). A factfinder might conclude that Nelson's statements were designed to protect the 17–year–old Hogan, who Nelson refers to at one point as "my youngster."

■ Even applying the *Martin* duress standard for 2113(e), as this Court will instruct the jury it must, there remains a factual dispute whether Hogan was compelled by a present and immediate "well-founded fear of impending death or serious bodily injury." *Martin*, 740 F.2d at 1361. " 'No matter how conclusive the evidence may be in a criminal case on a controverted material fact, the trial judge cannot make the finding or withdraw the issue from the jury.' " *United States v. Yannott*, 42 F.3d 999, 1005 (6th Cir.1994) (quoting *United States v. McKenzie*, 301 F.2d 880, 882 (6th Cir.1962)). The factual question of whether Nelson forced Hogan to accompany him in the bank robbery is properly decided by a jury. *Id.*

For these reasons, Nelson's motion to dismiss Count 2 is hereby DENIED.

### Count 3: "If Death Results"

Nelson's motion as to Count 3 requires first-impression analysis as to Congress' intent in amending the sixty-year-old bank robbery statute by the Violent Crime Control and Law Enforcement Act of 1994 ("the 1994 Act"), Pub.L. 103–322, 108 Stat.Ann. 1796 (1994).

The federal bank robbery statute remained unchanged for sixty years after its passage in 1934. Section 2113(e) provided that when the defendant killed someone or forced someone to accompany him in the process of robbing a bank, a jury could, in its discretion, sentence the defendant to death. That changed with *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which found such discretion in giving death sentences unconstitutional. Congress did not

reinstate the death penalty for § 2113(e) violations until, in the largest-ever expansion of the federal death penalty, it passed the Violent Crime Control and Law Enforcement Act of 1994 ("the Act"):

BANK ROBBERY.—Section 2113(e) of title 18, United States Code, is amended by striking "or punished by death if the verdict of the jury shall so direct" and inserting "or if death results shall be punished by death or life imprisonment."

Pub.L. 103–322, § 60003(a)(9), 108 Stat.Ann. 1796, 1969 (1994). Nelson argues that § 2113(e) is unconstitutionally vague as applied to him because it fails to draw a causal nexus between his conduct and the death of Terrance Hogan sufficient to permit criminal prosecution. He argues the lack of such a nexus violates his constitutional rights to due process and to be free of cruel and unusual punishment. On this ground, he seeks dismissal of Count 3.

The Government asserts the 1994 Act simply broadened the scope of the "felony murder" aspect of § 2113. "If Congress had intended to limit the clause 'if death results' to apply only to persons killed by the defendant, then there would have been no need to add the clause, since the statute contains language to this effect." Response to Motion to Dismiss at 5.

In order to assess these arguments, it is necessary to analyze what federal felony murder requires and whether amended § 2113(e) meets those requirements as to, specifically, an actus reus and proximate cause.

The Sixth Circuit has held that one who commits the acts specifically proscribed in § 2113(e)—killing or forcing someone to accompany him without consent—has committed a unique offense distinguishable from the simple bank robbery prohibition of § 2113(a). *United States v. Poindexter*, 44 F.3d 406, 408–09 (6th Cir.1995); *Etheridge*, 424 F.2d at 962. *Poindexter* likened § 2113(e) to felony murder in holding that prosecutors need not prove a defendant possessed a specific mens rea to kill in § 2113(e) cases. *Id.* at 409.[2]

---

**2.** Other courts have noted this aspect of § 2113(e), permitting prosecutions despite a lack

of proof as to a bank robber's specific intent to kill. *United States v. Jones*, 678 F.2d 102, 106

But both *Poindexter* and *Etheridge* specifically analyze whether the defendant committed one of the two acts criminalized by § 2113(e). *See Poindexter,* 44 F.3d at 408 (quoting Black's Law Dictionary "that 'to kill' is '[t]o deprive of life, to destroy the life of an animal or person'"). The Government concedes in this case, as it must, that Nelson has not killed according to *Poindexter* 's definition.

The Government, therefore, asks the Court to shift its focus from actus reus to what it characterizes as the statute's prohibited result: a death of a person.

There is constitutional precedent for transferring the guilt for another's act to an accomplice under a felony murder theory. *Tison v. Arizona,* 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987). Yet, Count 3 goes beyond *Tison.* In *Tison,* the Supreme Court let stand a felony murder conviction under Arizona law of two sons who helped their father escape from prison. The father executed hostages taken along the way with no immediate assistance from the sons. *Id.* at 140–41, 107 S.Ct. at 1679. Nevertheless, the Supreme Court held that the Tisons' major personal involvement in the felony and their reckless indifference to human life (if proven on remand) was sufficient to permit their convictions and death penalties under Arizona felony murder law. *Id.* at 158, 107 S.Ct. at 1688.

*Tison* satisfied the actus reus requirement by transferring culpability for an act from one guilty party to another. Neither the Sixth Circuit nor any other federal court, however, has authorized prosecution if a death results from a cause other than a culpable party's "killing." Further, research finds no case under the federal murder statute, 18 U.S.C. § 1111, or any of the several "if death results" statutes in which a federal court has permitted prosecution for a killing when a law enforcement officer pulled the trigger and a co-felon was the victim.[3]

Courts generally do not apply felony murder to third-party killings because the defendant's acts do not rise to another necessary element of criminal culpability: proximate cause. "[A] felon is not responsible for a homicide caused by some other person. It is not the purpose of the felony murder rule to foist authorship of a homicide upon a felon; the purpose is merely to clothe the felon's act of killing with malice." 2 Wharton's Criminal Law § 151 315–16 (15th ed. 1994); *State v. Severs,* 759 S.W.2d 935, 938 (Tenn.Ct. Crim.App.1988) (holding "the theory of proximate cause in relation to felony-murder is limited to acts committed by the accused or his accomplices which actually produce his death"); *but c.f. United States v. Martinez,* 16 F.3d 202, 207 (7th Cir.1994) (Posner, C.J., noting and criticizing this rule in dicta as "los[ing] sight of the deterrent function" of felony murder).

The government's position—Nelson committed a felony, someone died, hence criminal liability—essentially writes the probable cause requirement out of § 2113(e). The Eighth Circuit, sitting en banc, has rejected such an argument in a case involving an analogous provision, 18 U.S.C. § 844(i),[4] which makes the death penalty or life imprisonment available "if death results" from an

(9th Cir.1982); *United States v. Delay,* 500 F.2d 1360, 1362–64 (8th Cir.1974).

**3.** A paucity of precedent holds criminal liability is appropriate for killings of accomplices, *United States v. El–Zoubi,* 993 F.2d 442, 449 (5th Cir. 1993) (apparently the only federal appellate court to so hold), even by law enforcement officers, *see, e.g., Commonwealth v. Thomas,* 382 Pa. 639, 117 A.2d 204 (1955), *overruled, Commonwealth v. Redline,* 391 Pa. 486, 137 A.2d 472 (1958), but these cases have been roundly criticized. *See People v. Washington,* 62 Cal.2d 777, 44 Cal.Rptr. 442, 445, 402 P.2d 130, 133 (1965) (Trainor, C.J.); Recent Development, *Felony-*

*Murder Rule—Felon's Responsibility for Death of Accomplice,* 65 Colum.L.Rev. 1496, 1497 (1965).

**4.** Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both; ... and if death results to any person ... shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in § 34 of this title.
18 U.S.C. § 844(i).

arson. *United States v. Ryan,* 41 F.3d 361, 367 (8th Cir.1994). *Ryan* affirmed jury instructions requiring the government to prove that the defendant's "conduct was a proximate cause of [the victims'] deaths" and that "the defendant's conduct has such an effect in producing the deaths as to lead a reasonable person to regard his conduct as a cause of the deaths." *Id.*

Therefore, if Nelson is correct, § 2113(e) is unconstitutional as applied to him. There is, however, a reading of the statute more in tune with Congress' apparent intent in amending § 2113(e) that does not require the Court to reach the constitutional question. *See Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346, 56 S.Ct. 466, 482, 80 L.Ed. 688 (1936).

The majority of circuits that recently have examined "if death results" clauses hold that such clauses do not create independent criminal offenses; instead, they enhance penalties for extant offenses. *United States v. Rivera–Gomez,* 67 F.3d 993, 1000 (1st Cir.1995); *United States v. Oliver,* 60 F.3d 547, 551–54 (9th Cir.1995); *United States v. Williams,* 51 F.3d 1004, 1011 (11th Cir.1995) (all three interpreting 18 U.S.C. § 2119(3)); *United States v. Patterson,* 38 F.3d 139, 143–44 (4th Cir.1994) (interpreting 21 U.S.C. § 841(b)(1)(C)); *United States v. Ryan,* 9 F.3d 660, 667–69 (8th Cir.1993) (interpreting 18 U.S.C. § 844(i)), *aff'd* 41 F.3d 361 (8th Cir.1994) (en banc).[5] These circuit courts have examined the statutory text as well as relevant legislative history to determine whether Congress enacted a substantive offense or a penalty enhancement by an "if death results" clause. *McMillan v. Pennsylvania,* 477 U.S. 79, 85, 106 S.Ct. 2411, 2415–16, 91 L.Ed.2d 67 (1986); *Oliver,* 60 F.3d at 552.

The structure of § 2113(e) runs as follows. First, the statute identifies the parties within its scope: "Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense...." Next, the statute identifies the actus reus required for violation: "... kills any person, or forces any person to accompany him without the consent of such person." Finally, § 2113(e) sets out the penalties incurred by eligible persons who commit the prohibited acts: "... shall be imprisoned not less than ten years, *or if death results shall be punished by death or life imprisonment*" (italics added to identify 1994 amendment).

This structural analysis of § 2113(e) persuasively suggests the 1994 amendment acts as a penalty enhancer, *Oliver,* 60 F.3d at 553 (finding "if death results" provision did not "redefine the essential elements of carjacking" and that it could not stand alone as a separate offense); *Ryan,* 9 F.3d at 667, with the "if death results" factor to be determined at sentencing for possible application of a death sentence or life imprisonment.[6] *See* Pub.L. 103–322, § 60002, 108 Stat.Ann. 1796, 1964–66, codified at 18 U.S.C. § 3593 (1994) (providing procedures for bifurcated post-conviction penalty hearing when government seeks death penalty).

---

5. The Fifth Circuit, apparently alone, has held that an "if death results" clause creates a unique offense. *United States v. Triplett,* 922 F.2d 1174 (5th Cir.1991). Like *Ryan, Triplett* involved the federal arson statute, which provides for the death penalty or life imprisonment "if death results to any person." 18 U.S.C. § 844(i). The Fifth Circuit found the "if death results" clause gave rise to a separate offense, requiring the Government to prove beyond a reasonable doubt that "the fire resulted in the death of a person." *Triplett,* 922 F.2d at 1177. In *Triplett,* prosecutors met their burden and the Fifth Circuit affirmed Triplett's conviction under 18 U.S.C. § 844(i). *Id.* at 1176.

6. The new federal death penalty procedural scheme resolves some of these questions in capi-

tal cases. In § 2113(e) capital prosecutions, the government will have to prove "the defendant, as determined beyond a reasonable doubt at the [sentencing] hearing under § 3593" caused the death of the person in question. 18 U.S.C. § 3591(a)(2). The sentencer also must find at least one of the aggravating factors listed in 18 U.S.C. § 3592 to sentence the defendant to die. The Supreme Court may have signaled that the 1994 Act's sentence-enhancing provisions and procedural scheme are constitutional when it held recently that the use of "offender-specific information at sentencing without the procedural protections attendant at a criminal trial" did not offend the Double Jeopardy Clause. *Witte v. United States,* —— U.S. ——, 115 S.Ct. 2199, 2201, 132 L Ed.2d 351, 364 (1995).

The legislative history of the 1994 amendment to § 2113(e) also indicates Congress intended merely to enhance the penalties for bank robbery. H.R. 4032, the death penalty legislation eventually incorporated into the 1994 Act, "authorizes capital punishment for many other offenses and creates several new criminal offenses for which the death penalty is permitted.... The remainder of the offenses for which this legislation authorizes capital punishment are those in which a death results." Judiciary Committee Report at 12. The Judiciary Committee listed "new" offenses for which H.R. 4032 authorized the death penalty, such as murder by a federal prisoner, 18 U.S.C. § 2119, and drive-by shootings resulting in death, 18 U.S.C. § 922, while listing "bank robbery where death results" among the already-existing offenses.

Finally, the lengthy Congressional debates surrounding passage of the 1994 Act emphasize time and again that lawmakers believed they were expanding the federal death penalty, not creating new federal offenses. *See, e.g.,* 140 Cong.Rec. E1851–01 (daily ed. Sept. 13, 1994) (speech of Rep. Rostenkowski) ("The death penalty is expanded to include over 60 violent crimes....").

Courts properly have worried whether interpreting such statutes as penalty-enhancers begs other issues, principally the constitutionality of lowering the burden of proof by trying the critical proximate cause question under a preponderance standard at sentencing rather than under a reasonable-doubt standard at trial. "[T]he lagniappe might begin to overwhelm the main course. In all probability, there are constitutional limits on the way sentencing factors can be deployed in the punishment of a substantive offense." *Rivera–Gomez,* 67 F.3d at 1001. This case does not yet reach such a limit. The Government is statutorily barred from seeking the death penalty for Nelson. 18 U.S.C. § 3591(a)(2)(D). As for a potential life sentence, Nelson's previous criminal record (he says was in Tennessee fleeing a California parole violation), his alleged use of a dangerous weapon in committing these offenses, and the fact that he faces a mandatory minimum of 15 years in prison if convicted of counts 2 and 4 suggest that while *Rivera–Gomez'* concerns are real, in this case, they are not present.

Nonetheless, in order to avoid having to declare § 2113(e) unconstitutional as applied, to follow precedent, and to be true to the statutory structure and legislative history, the Court holds that the "if death results" clause of § 2113(e) serves to enhance the penalty for bank robberies where death is proximately caused by the defendant's acts. Congress did not create the offense of "bank robbery where death results" in 1994.

Therefore, Nelson's motion as to Count Three is granted and the charge DISMISSED.

It is so ORDERED.

## ORDER

For the reasons stated in the accompanying Memorandum and Opinion:

1. Defendant's motion to dismiss Count Two of the indictment in the above-styled action is hereby DENIED;

2. Defendant's motion to dismiss Count Three of the indictment in the above-styled matter is hereby GRANTED and Count Three DISMISSED.

It is so ORDERED.