RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0365p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 07-3944

*v.*

LAVELLE PARKS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 03-00213—John D. Holschuh, District Judge.

Submitted: April 29, 2009

Decided and Filed: October 16, 2009

Before: MERRITT, COOK, and WHITE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Richard A. Cline, RICHARD A. CLINE & CO., LLC, Columbus, Ohio, for Appellant. David M. DeVillers, J. Michael Marous, ASSISTANT UNITED STATES ATTORNEYS, Columbus, Ohio, for Appellee.

MERRITT, J., delivered the opinion of the court. WHITE, J. (pp. 9-11), delivered a separate concurring opinion. COOK, J. (p. 12), delivered a separate opinion concurring in part and dissenting.

_____

**OPINION**

_____

MERRITT, Circuit Judge. On December 2, 2003, three men robbed a bank in Pataskala, Ohio, while their getaway driver, Lavelle Parks, waited outside. The men made off with $5,347, and a high-speed chase ensued. While trying to evade police, Parks crashed the getaway car into another vehicle, resulting in the death of Daryl Williams, one of Parks's passengers and co-participants.

1

This case raises two questions of statutory construction with regard to a provision of the federal bank robbery statute, 18 U.S.C. § 2113(e). First, what *mens rea*, if any, does the government need to prove to establish a violation of § 2113(e), which punishes anyone who, in "attempting to avoid apprehension for [a bank robbery], . . . kills any person"? Second, what is the minimum penalty for such a killing? Though distinct, these questions are intertwined in at least one important respect: if, as the prosecution asserts, the minimum penalty for violating the statute is life imprisonment, a court should be less inclined to conclude that the statute itself dispenses with any *mens rea* requirement, since "the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with *mens rea*." *Staples v. United States*, 511 U.S. 600, 616 (1994). The District Court, while expressing reluctance to impose a life sentence, believed that *United States v. Poindexter*, 44 F.3d 406 (6th Cir. 1995), controlled the outcome of this case and required a mandatory life sentence for even an accidental killing.[1] The parties did not point out to the District Court that the language of the statute interpreted in *Poindexter* is different from the language of the statute we interpret here. Because *Poindexter* interpreted an earlier version of the statute, which said nothing about life imprisonment, we vacate Parks's sentence and remand the case to the District Court for reconsideration. Because Judges Cook and White agree that the conviction under § 2113(e) must be upheld and Judge White and I agree that the sentence must be reversed, our judgment in this case is that the conviction is affirmed but the sentence is vacated and the case remanded for reconsideration.

---

[1] *See United States v. Parks*, 411 F. Supp. 2d 846, 848-49 (S.D. Ohio 2005) ("Although I . . . am required to follow the appellate court's opinion in the *Poindexter* case, an argument could be made that Congress intended the enhanced penalty provisions of 18 U.S.C. § 2113(e) to apply to those cases in which a defendant murders or kidnaps an innocent person in connection with a bank robbery, and not to a situation in which an accomplice is accidentally killed in a car accident during the attempted getaway. Such argument would be based, in part, on the legislative history of the statute which shows that it was intended to apply to cases in which '*murder* or kidnapping [is] committed' in connection with a bank robbery.") (quoting H.R. No. 1461, 73rd Cong., 2d Sess. (1934)).

When 18 U.S.C. § 2113 was passed in 1934, subsection (e) read:

> Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

Thus, whoever, while engaged in any one of three bank-robbery-related activities, killed any person or forced any person to accompany him, would be imprisoned for at least ten years, with no statutory maximum imposed. Notably, this statute permitted the imposition of the death penalty on a defendant who forced a person to accompany him, even if that forced accompaniment did not result in the loss of life.

In *Poindexter*, a panel of this Court held that Congress "did not intend to add an additional scienter requirement to the killing component of" § 2113(e). *Poindexter*, 44 F.3d at 409. In other words, the *mens rea* for killing a person while fleeing a bank robbery was, according to *Poindexter*, strict liability. Under this reading, a person would seemingly violate § 2113(e) if he jovially slapped his accomplice on the back to congratulate him on a job well done and thereby inadvertently caused food to lodge in his windpipe, resulting in his death.[2] The *Poindexter* Court reached this holding by first stating that a court should follow the plain meaning of a statute, except in rare and exceptional circumstances. It then consulted the *Black's Law Dictionary* definition of "kill" and noted that it, unlike the definition of "murder," did not include an element of scienter. It concluded that "[b]ecause the plain language of the statute says simply 'kills,' and not 'intentionally kills' or 'murders,' the settled principles of construction direct us to conclude that the legislature did not intend to add an additional scienter requirement to the killing component of the crime." *Id.* at 409.

---

[2]Under the prosecution's reading of *Poindexter*, even the backseat passengers in the getaway vehicle would receive mandatory life sentences for "kill[ing]" Williams. This reading was rejected by the District Court.

This interpretive methodology appears to be in significant tension with a long line of Supreme Court cases, the twentieth-century progenitor of which is *Morissette v. United States*, 342 U.S. 246 (1952).  In *Morissette*, the Court explained that

> [t]he contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion.  It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.  A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory "But I didn't mean to," and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution.  Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will."

*Id.* at 250-51 (footnotes omitted).

Because of this unqualified acceptance, "[a]s the states codified the common law of crimes, even if their enactments were silent on the subject [of intent], their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation.  Courts, with little hesitation or division, found an implication of the requirement as to offenses that were taken over from the common law." *Id.* at 252. Applying these background principles of interpretation, the Court concluded that "[c]ongressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except in the Act." *Id.* at 262.  Put more concretely, if Congress wants to eliminate a mental element from its codification of a common law crime, it must state its intention to do so clearly.  *See id.* at 263; *United States v. Hill*, 55 F.3d 1197, 1203 (6th Cir. 1995) ("[T]he Supreme Court has required evidence of Congressional intent to dispense with *mens rea* as an element of a crime before the Court will do so itself.").

This principle has been reaffirmed many times since *Morissette*. *See, e.g.*, *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *Staples*, 511 U.S. at 600; *Evans v. United States*, 504 U.S. 225 (1992). *Poindexter*'s statement that, because Congress did not say "intentionally kills," the statute must be read to reach unintentional killings, seems irreconcilable with *Morissette*'s interpretive methodology.[3]

But even if *Poindexter* and *Morissette* could theoretically be harmonized,[4] the precedential value of *Poindexter* for the sentence in this case has been vitiated by the 1994 amendment of § 2113(e), which struck out the final 13 words and replaced them as follows:

> Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, ~~or punished by death if the verdict of the jury shall so direct,~~ or if death results shall be punished by death or life imprisonment.

This amended version now states, in relevant part, that "[w]hoever, in . . . attempting to avoid apprehension for the commission of [a bank robbery], . . . kills any person . . . shall be imprisoned not less than ten years, or if death results shall be punished by death or

---

[3]The *Poindexter* court also seemed to believe that the choice was binary: the law must require either that the defendant specifically intended to kill, or must require no *mens rea* at all. But an intermediate *mens rea*, such as reckless indifference to human life, could also be inferred. This means that Parks would not necessarily be able to escape conviction under § 2113(e) just because he (apparently) did not intend to kill Williams.

[4]It may be, for example, that § 2113(e) contains no *mens rea* requirement because it presupposes some criminal intent related to the underlying bank robbery. *See Dean v. United States*, 129 S.Ct. 1849, 1855 (2009) ("It is unusual to impose criminal punishment for the consequences of purely accidental conduct. But it is not unusual to punish individuals for the unintended consequences of their *unlawful* acts."). It does not follow from *Dean*, however, as the dissent asserts, that § 2113(e) necessarily lacks any *mens rea* element simply because "the underlying felony (here robbery) supplies the *mens rea* required for the killing. Courts have often found a *mens rea* element satisfied whenever the illegal act is committed in the course of a felony. *But see* Guyora Binder, *The Origins of American Felony Murder Rules*, 57 STAN. L. REV. 59, 63 (2004) (explaining that the received wisdom about the felony murder rule is "a myth," and that "Americans did not receive any felony murder rules from England, for the simple reason that there was no common law felony murder rule at the time of the American Revolution"). But that is not to say that any harm that occurs during the course of a felony automatically lacks an independent *mens rea* requirement. Were that so, *Dean* itself would have been a much easier case. At any rate, the point is that *even if* § 2113(e) can ultimately be read to impose strict liability, the case should be remanded to reevaluate the statute in light of its amendment.

life imprisonment." Read literally, this suggests that a killing carries a mandatory minimum sentence of ten years, but a killing in which death results carries a mandatory minimum sentence of life imprisonment. Needless to say, this purports to set out a nonsensical distinction, since every killing, by definition, results in death.

The history of this amendment sheds some light on the introduction of this ambiguity. When the District Court reconsiders this case, we would point out for its consideration the fact that § 2113(e) was amended as part of the Federal Death Penalty Act, which appeared as Title VI of the Violent Crime Control and Law Enforcement Act of 1994. The Federal Death Penalty Act creates a structured system of mitigators and aggravators — including provisions concerning the intention of the defendant and the nature of the crime — to be used in determining "whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." 18 U.S.C. § 3593(e). In addition to introducing this structured system, the Violent Crime Control and Law Enforcement Act amended fourteen sections of title 18 of the U.S. Code to bring them into conformity with the new law:

> (a) CONFORMING CHANGES IN TITLE 18 — Title 18, United States Code, is amended as follows:
> . . . .
> (9) BANK ROBBERY — Section 2113(e) of title 18, United States Code, is amended by striking "or punished by death if the verdict of the jury shall so direct" and inserting "or if death results shall be punished by death or life imprisonment".

Violent Crime Control and Law Enforcement Act of 1994, H.R. 3355, 103d Cong., § 60003 (1994). This suggests that the amendment to § 2113(e) was primarily intended to bring it into compliance with the criteria for death-eligibility set out in § 3591, principally by altering the rule that a death sentence could be imposed whenever "the verdict of the jury shall so direct," including for a non-fatal forced accompaniment. The House Report accompanying the bill corroborates this interpretation, noting that "Section 2(a)(7) conforms section 2113(e) of title 18, United State Code, bank robbery where death results, by eliminating an obsolete and unconstitutional procedure, thereby incorporating the new comprehensive death penalty procedures." H.R. REP. NO. 103-

466, at 21 (1994). These sources suggest that the amendment was intended to harmonize § 2113(e) with the constitutional limits the Supreme Court has placed on the death penalty (e.g., the unavailability of the death penalty for the crime of forced accompaniment that does not result in death) and with Congress's overarching death penalty legislation, codified at 18 U.S.C. §§ 3591-3599, so that the two statutes should be considered *in pari materia*.

Even if we leave aside the *pari materia* requirement that the bank robbery and death penalty provisions be construed with reference to each other, the *Poindexter* case is clearly distinguishable from this case as to the sentence. In *Poindexter*, the court was dealing with a ten-year sentence for an unintended car-crash death during the getaway from a robbery. The robbery itself without the death would have carried an offense level of 26, which corresponds to a recommended sentence between five and twelve years, depending on criminal history. *See* U.S. Sentencing Guidelines Manual § 2B3.1 and Sentencing Table. In *Poindexter*, the additional imprisonment needed to get to the ten-year minimum would have probably been zero to three years, so that reading *mens rea* out of the statute apparently had little effect on the ultimate sentence. But eliminating *mens rea* when the sentence is life instead of ten years makes no sense whatever and is contrary to the principle quoted from the *Staples* case in the second paragraph of this opinion.

It is perhaps understandable that the parties, both in the court below and in this court, could have completely missed the relationship between the amendment to § 2113(e) in 1994 and the Federal Death Penalty Act, since the separate codification of the two in different parts of the United States Code does not make the relationships clear. But they should have caught the fact that the 1994 Amendment changed the language of the statute interpreted in *Poindexter*, and the recognition of that fact should have led to legal research showing that the two provisions of the same statute must be read together and that *Poindexter* and this case are not the same. We return the case to the District Court so that counsel can more fully assist the District Court in deciding the case. In so doing, the parties should also consider the applicability of the rule of lenity,

which "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 128 S. Ct. 2020, 2025 (2008) (plurality opinion); *see also United States v. Ford*, 560 F.3d 420, 425 (6th Cir. 2009).

Accordingly, Parks's conviction is affirmed and sentence is vacated and the case is remanded for reconsideration.

---

## CONCURRENCE

---

WHITE, Circuit Judge, concurring.   I agree with Judge Cook that Parks's conviction must be affirmed under this court's decision in *United States v. Poindexter,* 44 F.3d 406 (6th Cir. 1995).  Whatever the shortcomings of the *Poindexter* opinion, and notwithstanding the statutory changes in the penalty provision, *Poindexter* controls on the *mens rea* issue.

I join in Judge Merritt's discussion of the sentencing issue, and agree that Parks's sentence must be vacated and the matter remanded for resentencing in light of our opinions and any further arguments made on remand.

18 U.S.C. § 2113(e), as amended in 1994, is ambiguous on its face:

> Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

It is capable of multiple interpretations, none of which is without problems, and none of which is clearly consistent with Congressional intent.

One construction, argued by the Government,  is that Congress intended to provide that if a robber forces a person to accompany him, and death does not result, the minimum punishment is  ten years; if a robber kills someone, whether the person was forced to accompany the robber or not, the robber must be sentenced to either life imprisonment or the death penalty.  Under this construction, the amendment had two purposes – to bring the section into compliance with Constitutional requirements for imposing the death penalty and to increase the minimum sentence for a killing in the

course of attempting, committing or escaping from a robbery. This construction, however, ignores the clear inclusion in the amended statute of the former provision that "[w]hoever, in committing . . ., avoiding, . . . or in freeing himself . . . from arrest or confinement . . ., kills any person . . . shall be imprisoned not less than ten years..." Further, while the legislative history supports an intent to meet Constitutional requirements for imposing the death penalty, no history is cited that sheds light on the question whether the "if death results" language was intended to increase the mandatory minimum penalty for a killing, or, alternatively, to limit the applicability of the death penalty in a forced accompaniment case to situations where the forced accompaniment results in death.

A second possible construction, advanced by Parks in his letter brief filed after argument, is that Congress intended the amended provision to state that if a robber kills someone, or forces someone to accompany him, in the course of committing, attempting or escaping from a robbery, he is subject to a minimum term of ten years; if the robber abducts someone and death results, the robber must be sentenced to life imprisonment or death. This construction, rather than ignoring Congress's preservation of the "kills any person" language preceding the ten-year provision, inserts the clause "from the forced accompaniment" after "if death results," where Congress did not. This construction is, however, consistent with the circumstances of the amendment, i.e., to bring § 2113(e) into compliance with the Supreme Court's death-penalty jurisprudence, and recognizes that Congress chose to preserve certain pre-amendment language. It also gives meaning to all the statute's provisions, in accordance with *United States v. Menasche*, 348 U.S. 528 (1995), and logically argues that "if death results" refers only to the preceding language that entails the possibility that death might not result, i.e., the forcible accompaniment language.

Another possible construction reads the amended statute as continuing to provide for a ten-year minimum sentence for a killing in the course of a robbery or a forced accompaniment, but further providing that where there is either a killing or a death resulting from a forced accompaniment, if the facts bring the case within the ambit of

the death penalty provisions, the sentence must be either the death penalty or life imprisonment, as determined in accordance with the provisions of the Federal Death Penalty Act, 18 U.S.C. §§ 3591, 3592 and 3593. Under this construction, a robber who kills someone, but who would not be subject to the death penalty (in this case because the person killed was a participant in the offense, § 3591(a)(2)(C) and (D)), is not subject to mandatory life imprisonment, and can be sentenced to any term between ten years and life. This construction endeavors to attach meaning to all statutory terms and construe the amended statute in light of the purpose of the amendment.

All of these constructions are plausible and none is more consistent with the ambiguous statutory language than the others. Thus, as respects the sentencing issue, I agree with Judge Merritt that the rule of lenity must enter into the equation on remand.

---

**CONCURRING IN PART AND DISSENTING**

---

COOK, Circuit Judge, concurring in part and dissenting. Because *United States v. Poindexter* continues to control our interpretation of the *mens rea* requirement in 18 U.S.C. § 2113(e), we affirm Parks's conviction.

*Poindexter* analyzed Section 2113(e) and held that the plain meaning of "kills" in the phrase "kills any person" includes no scienter element. *See Poindexter*, 44 F.3d at 409. *Poindexter* interpreted a version of Section 2113(e) that Congress has since amended, but that amendment left undisturbed the portion of the statute relevant to *Poindexter*'s *mens rea* holding. The amendment changed only Section 2113(e)'s minimum punishment provisions—not the "kills any person" aspect. Thus, regardless of whether the amendment rendered the statute's penalty provisions ambiguous, *Poindexter*'s interpretation of the *mens rea* element still holds. *See, e.g.*, *United States v. Parrett*, 530 F.3d 422, 430 n.5 (6th Cir. 2008) (despite amendments to 21 U.S.C. § 853, court's prior interpretation controlled because the changes "did not affect the statutory language on which the . . . court based its decision.").

And because Parks failed to challenge his sentence in the district court, I would not consider sentencing on appeal, and would leave the district court's sentencing judgment in place.