RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

        *v.*

ROBERT JAMES WELCH,
        *Defendant-Appellant.*

No. 10-4025

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 09-00322-001—David D. Dowd, Jr., District Judge.

Argued: March 1, 2012

Decided and Filed:  August 2, 2012

Before:  MERRITT and COOK, Circuit Judges; COX, District Judge.[*]

─────────────────

## COUNSEL

**ARGUED:** Barry M. Ward, Akron, Ohio, for Appellant.  Gary D. Arbeznik, ASSISTANT UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Barry M. Ward, Akron, Ohio, for Appellant.  Gary D. Arbeznik, ASSISTANT UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

        MERRITT, Circuit Judge.  This is a direct criminal appeal from a guilty plea for counterfeiting.  Defendant raises two sentencing issues on appeal.  First, he contends that the district court violated the *Ex Post Facto* Clause of the United States Constitution

───────────────

        [*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

when it calculated his offense level by relying on an amendment to U.S.S.G. § 2B5.1 that became effective between the time of his illegal conduct and his sentencing date, thereby impermissibly subjecting him to a harsher sentence than he would have been subject to at the time of the illegal conduct. Second, defendant contends that the district court erred by not ordering his federal sentence to run concurrently with his undischarged Arizona state sentence in contravention of U.S.S.G. § 5G1.3(b). Because we agree that the district court violated the *Ex Post Facto* Clause of the Constitution by relying on an amendment to the Sentencing Guidelines that was not in effect at the time of Welch's illegal conduct and that subjected him to a harsher sentence, we remand for resentencing.

## I.

The facts of the counterfeiting are not in dispute. Welch was charged with counterfeiting after bleaching genuine, small denomination federal reserve notes and then printing a higher denomination on the bleached, genuine notes. Indictment at 2. Specifically, the indictment alleges that between February 14, 2009, and June 10, 2009, Welch and his wife took genuine $5 notes, cooked them in a microwave, scrubbed the ink off with bleach and used a copier to counterfeit $50 and $100 notes by printing the higher denominations onto genuine currency paper. Although counterfeit notes were passed in Ohio, Welch then traveled to Arizona where he was arrested on June 22, 2009. He was convicted of five counts of forgery in Maricopa County (Arizona) Superior Court on February 19, 2010, for counterfeiting conduct in that state and sentenced to five years on each count, to run concurrently with a sentence imposed in the same court for a separate drug offense. Defendant was arraigned on March 30, 2010, in federal court on the Ohio counterfeiting charges. He pleaded guilty without a plea agreement to four violations of counterfeiting, including one count of conspiracy to manufacture and pass counterfeit obligations or securities with intent to defraud the United States in violation of 18 U.S.C. § 371 (Count I) and three counts of falsely making, forging, counterfeiting or altering, as well as passing, obligations or securities of the United States with intent to defraud in violation of 18 U.S.C. §§ 471 and 472 (Counts 2, 3 and 4). Welch was

sentenced on the federal charges in the United States District Court for the Northern District of Ohio on August 5, 2010, to concurrent 42-month sentences on each of the four counts, with 24 months to be served concurrently with an Arizona state sentence and the remaining 18 months to be served consecutively to the Arizona state sentence. Welch filed a timely notice of appeal.

## II.

### A. *Ex Post Facto Challenge*

The first question on appeal is whether the district court erred in using U.S.S.G. § 2B5.1 instead of U.S.S.G. § 2B1.1 to calculate Welch's offense level. Generally, courts use the Guidelines in effect at the time of sentencing, which in this case (August 2010) would be the 2009 version of the Guidelines Manual. While some confusion existed as to which Guideline section was to be applied to defendants with counterfeiting convictions arising from the bleaching of genuine currency to create higher denomination bills, courts were relying primarily on § 2B1.1 to sentence for conduct that occurred prior to November 2009. *See, e.g., United States v. Taylor*, 435 F. App'x 294, at **2 (5th Cir. 2010); *United States v. Dison*, 330 F. App'x 56 (5th Cir. 2009); *United States v. Schreckengost*, 384 F.3d 922 (7th Cir. 2004); *United States v. Inclema*, 363 F.3d 1177 (11th Cir. 2004).

A review of the Guideline language before November 1, 2009, demonstrates the ambiguity. Application Note 3 to § 2B5.1 *expressly excludes* altered genuine notes, which is arguably what Welch had, from the purview of § 2B5.1:

> 3. Inapplicability to Genuine but Fraudulently Altered Instruments.— *"Counterfeit," as used in this section, means an instrument that purports to be genuine but is not, because it* **has been falsely made or manufactured in its entirety. Offenses involving genuine instruments that have been altered are covered under § 2B1.1** *(Theft, Property Destruction, and Fraud).*

U.S.S.G. § 2B5.1 cmt. n.3 (pre-2009) (emphasis added in bold).  In addition to stating that it applies only to instruments "manufactured in [their] entirety," the note also directs that "genuine instruments that have been altered" are covered by § 2B1.1.

Welch maintains that because he "altered" federal reserve notes and did not "manufacture" them in their entirety, § 2B1.1 should apply under the plain language of Application Note 3 to § 2B5.1.  Yet, § 2B1.1 is not clearly applicable either.  Section 2B1.1 is entitled "Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; *Offenses Involving Altered or Counterfeit Instruments Other Than Counterfeit Bearer Obligations of the United States*."  (Emphasis added.) The introductory comments to § 2B1.1 state, in relevant part:  "These sections address basic forms of property offenses: theft, embezzlement, fraud, forgery, counterfeiting *(other than offenses involving altered or counterfeit bearer obligations of the United States.)*"  Introductory Commentary to § 2B1.1 (emphasis added).  The title of and comments to § 2B1.1 create confusion as to whether genuine currency altered by bleaching falls within this section despite the directive of Application Note 3 to § 2B5.1.  Despite the ambiguity, most courts sentencing defendants who bleached genuine currency in the same manner as Welch before November 1, 2009, used § 2B1.1 to sentence defendants.

In response to the confusion as to whether § 2B1.1 or § 2B5.1 applied to altered genuine currency, the Sentencing Commission issued Amendment 731, which amended § 2B5.1 to expressly include alterations of currency by bleaching within its purview.  Amendment 731, which became effective on November 1, 2009, says, in relevant part:

> Section 2B5.1(b)(2)(B) is amended by inserting "(ii) genuine United States currency paper from which the ink or other distinctive counterfeit deterrent has been completely or partially removed;" after "papers"; and by striking "or (ii)" and inserting "Or (iii)".

In addition, Amendment 731 added the following to the "Definitions" section of Application Note 1 to § 2B5.1:

> *1. Definitions.—For purposes of this guideline:*

> *"Counterfeit" refers to an instrument that has been falsely made, manufactured, or altered. For example, an instrument that has been falsely made or manufactured in its entirety is "counterfeit", **as is a genuine instrument that has been falsely altered (such as a genuine $5 bill that has been altered to appear to be a genuine $100 bill).***

U.S.S.G. § 2B5.1 cmt. n.1 (emphasis added in bold).  Welch argues that using the 2009 version of § 2B5.1, which took effect between the time of his offense conduct and his sentencing, violates the *Ex Post Facto* Clause of the United States Constitution because it was not in effect at the time of his offense and it subjects him to a significantly higher penalty.

We review an *Ex Post Facto* challenge *de novo*.  *United States v. Duane*, 533 F.3d 441, 445 (6th Cir. 2008).  A district court generally applies the version of the Sentencing Guidelines in place at the time of sentencing unless applying the current version would amount to a violation of the *Ex Post Facto* Clause.  U.S.S.G. § 1B1.11(a) & (b); *United States v. Kussmaul*, 987 F.2d 345 (6th Cir. 1993).  To determine whether an *ex post facto* violation exists, we must compare the application of the Guidelines as they existed on the date the offense was committed with the application of the Guidelines in place on the day of sentencing. *Kussmaul*, 987 F.2d at 350.  If a revision of the Guidelines "'changes the legal consequences of acts completed before its effective date' to the detriment of the [defendant], the Guidelines in effect at the time of the criminal act must be applied." *Id.* at 351-52 (quoting *Miller v. Florida*, 482 U.S. 423 (1987)).  In *Miller*, the Supreme Court unanimously concluded that a revision in Florida's sentencing guidelines that went into effect between the date of the defendant's offense and the date of his conviction violated the *Ex Post Facto* Clause.  The Court's conclusion that the new guideline was more onerous than the prior law rested entirely on an objective appraisal of the impact of the change on the length of the defendant's presumptive sentence. 482 U.S. at 431 ("Looking only at the change in primary offense points, the revised guidelines law clearly disadvantages petitioner and similarly situated defendants.").

The district court in this case applied U.S.S.G. § 2B5.1(b)(3)[1] from the 2009 version of the Guidelines, which calls for a base offense level of 15. Two levels were added for defendant's role in the offense for an adjusted level of 17. Defendant then received a three-level reduction for acceptance of responsibility for a final adjusted level of 14. Combining an offense level of 14 with a criminal history category of VI, Welch's advisory guideline range was 37-46 months. By contrast, had the district court used § 2B1.1 (there was no material change relevant to this situation to the language of § 2B1.1 between the 2008 and 2009 versions) to calculate the advisory range and applied the same adjustments, Welch would have received a final adjusted offense level of 9, which when coupled with the criminal history category VI results in a sentencing range of 21-27 months. Applying the Supreme Court's "objective appraisal" of the impact between using § 2B1.1 or using § 2B5.1 after the Sentencing Commission's "clarification" on November 1, 2009, we conclude that using § 2B5.1 with its newly revised commentary would violate the *Ex Post Facto* Clause in Welch's situation.

The government concedes the ambiguity in the pre-2009 versions of § 2B5.1, but argues that the issuance of Amendment 731 and addition of Application Note 1 simply "clarify" what § 2B5.1 always intended. It contends that Amendment 731 resulted in no substantive change to the guideline so there can be no *Ex Post Facto* violation. We find

---

[1] **§ 2B5.1. Offenses Involving Counterfeit Bearer Obligations of the United States (2009 version)**

. . .

(b) Specific Offense Characteristics

. . .

(2) If the defendant (A) manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting; or (B) controlled or possessed (i) counterfeiting paper similar to a distinctive paper; (ii) genuine United States currency paper from which the ink or other distinctive counterfeit deterrent has been completely or partially removed; or (iii) a feature or device essentially identical to a distinctive counterfeit deterrent, increase by **2** levels.

(3) If subsection (b)(2)(A) applies, and the offense level determined under that subsection is less than level **15**, increase to level **15**.

. . .

little to support the government's position, including, most tellingly, the fact that courts used § 2B1.1 instead of § 2B5.1 to calculate the offense level for defendants convicted of bleaching genuine reserve notes and printing higher denominations on the genuine currency as Welch did in this case. In addition, although we do not find this a definitive indicator, the Sentencing Commission did not label Amendment 731 a "clarifying" amendment. While Amendment 731 undoubtedly "clarified" the application of § 2B5.1 for future application to defendants who bleach genuine currency, it is acknowledged by the government that prior to its passage it was unclear if offenses involving bleached notes that occurred before the effective date of the "clarification" should be sentenced under § 2B1.1 or § 2B5.1. *See* Probation Officer's Response to Defendant's Objections, Presentence Investigation Report at 25.

The indictment, in fact, charged Welch with obtaining "printers, scanners, copiers, surgical gloves, oven cleaner, stain remover, tape, glue, utility blades, and other equipment to be used in *altering genuine Federal Reserve Notes*." Indictment at 2. The word "altering," not manufacturing, was used in all four counts of the indictment. *Id.* at 4-5. His offense involved genuine reserve notes that had been altered. Welch argues that bleaching notes is not the same as "manufacturing" or "producing" counterfeit federal reserve notes. He contends that he "altered" notes rather than "produced" them and that application note 3 to the 2008 Guidelines for § 2B5.1 excluded "altered" notes for sentencing under that guideline section. It does not appear that the Sixth Circuit has addressed this question or that any federal courts have yet addressed the *Ex Post Facto* question raised by Amendment 731.

Several courts, confronting the same question before Amendment 731 came to be, explained that faced with the ambiguity created by the plain language of the Guidelines in § 2B1.1 and § 2B5.1, the rule of lenity requires that § 2B1.1 apply. *See United States v. Dison*, 330 F. App'x 56 (5th Cir. 2009); *United States v. Schreckengost*, 384 F.3d 922 (7th Cir. 2004); *United States v. Inclema*, 363 F.3d 1177 (11th Cir. 2004). We agree that the rule of lenity, which requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them, applies here. *See*

*United States v. Parks*, 583 F.3d 923, 928 (6th Cir. 2009) (applying rule of lenity when faced with ambiguity in Sentencing Guidelines).

The government also argues that any error in using § 2B5.1 instead of § 2B1.1 was harmless because the 18-month term of imprisonment imposed by the district court to be served consecutively to the Arizona state sentence was less than the 21-27 month range Welch claims he should have been subject to under § 2B1.1. The government argues that the record reflects that the district court was going to impose some sort of consecutive sentence apart from the Arizona sentence and that it is unlikely it would have gone below 18 months. By using § 2B5.1 instead of §2B1.1, Welch was subjected to a substantially higher advisory guideline range. We choose not to speculate on what sentence the district court might impose after recalculating Welch's sentence under § 2B1.1.

**B.** *Failure to Run Entire Federal Sentence Concurrently with State Court Sentence*

Welch contends that U.S.S.G. § 5G1.3(b)[2] requires the district court to run his federal sentence entirely concurrent with a sentence Welch was serving for

---

[2] U.S.S.G. § 5G1.3. Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment, states in relevant part:

. . .

(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

(c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

counterfeiting in Arizona state prison.  Welch did not object to the sentence on this ground below, so we review for plain error.

Section 5G1.3(b) does not apply to Welch because his state conviction for passing counterfeit currency in Arizona did not increase the sentence calculated under the federal guidelines.  Welch's base offense level and two-level enhancement for a leadership role were arrived at based solely on Welch's production of counterfeit notes through bleaching genuine notes and his role in conspiring with his wife to further the counterfeiting scheme in Ohio.  The conduct that formed the basis for his federal sentence was entirely separate from the passing of the counterfeit notes in Arizona that formed the basis for the Arizona sentence.  The district court properly exercised its discretion under § 5G1.3(c) to impose a term of imprisonment to achieve a "reasonable punishment" for the instant offense, be it concurrent, partially concurrent or consecutive. *United States v. Watford*, 468 F.3d 891, 915 (6th Cir. 2006).

For the foregoing reasons, we vacate the sentence and remand to the district court for resentencing.