RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0325p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DONAVON E. HUFF,

        *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,

        *Respondent-Appellee.*

No. 10-3903

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:09-cv-275—John R. Adams, District Judge.

Argued: June 14, 2013

Decided and Filed: November 5, 2013

Before: McKEAGUE and DONALD, Circuit Judges; LAWSON, District Judge.[*]

─────────────────

## COUNSEL

**ARGUED:** Michael M. Losavio, Louisville, Kentucky, for Appellant. Robert W. Kern, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Michael M. Losavio, Louisville, Kentucky, for Appellant. Robert W. Kern, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

DAVID M. LAWSON, District Judge. Donavon Huff appeals the denial of his motion to vacate his sentence, which he filed under 28 U.S.C. § 2255. Huff had pleaded guilty to various fraud and identity theft charges under a plea agreement in which the

─────────────────

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

parties agreed, among other things, that the November 1, 2002 Sentencing Guideline Manual would be used to calculate his sentencing guideline range. The sentencing court, however, used a later version, resulting in a higher-than-anticipated range, and sentenced Huff to a longer prison term. Huff filed a direct appeal raising a viable appellate issue, but his appellate lawyer, he says, gave him bad advice and talked him into dismissing the appeal, warning that the district judge might vindictively increase Huff's sentence on remand. The district court rejected Huff's ensuing ineffective-assistance-of-counsel claim without holding an evidentiary hearing. We believe that a hearing was necessary to address that claim properly, and it was error not to hold one. Therefore, we reverse the district court's order and remand for further proceedings.

I.

The defendant was indicted on January 17, 2007 and charged with one count of conspiracy in violation of 18 U.S.C. § 371, one count of identity theft in violation of 18 U.S.C. § 1028(a)(7), and five counts of access device fraud in violation of 18 U.S.C. § 1029(a)(2). On May 3, 2007, the defendant pleaded guilty to conspiracy, identity theft, and two counts of access device fraud with the benefit of a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B). Huff hatched his fraudulent scheme in 2001 while he was employed at an insurance company and had access to customers' account information. He used that information to obtain credit cards and other lines of credit, and he employed a juvenile to create and process fraudulent cell phone contracts using the purloined information. The loss amount exceeded $350,000.

The plea agreement contained a stipulation by the parties that the Sentencing Guidelines Manual that was effective on November 1, 2002 applied to Huff. The parties calculated the defendant's Chapter 2 offense level at 22, and agreed that no other sentencing guideline adjustments other than those specified in the agreement applied. The parties' calculation did not include upward adjustments for either abuse of a position of trust under Guidelines section 3B1.3 or for the use of a minor under section 3B1.4. The plea agreement stated that the court would determine the defendant's eligibility for an acceptance of responsibility adjustment on the date of sentencing, but the parties

agreed that if the court followed the parties' stipulations the total adjusted offense level would be 19.  The plea agreement stated that the parties had no agreement as to the applicable criminal history category and that the criminal history category would be determined by the court after completion of a pre-sentence investigation by the United States Probation Department.  The plea agreement contained an acknowledgment that sentencing recommendations are not binding on the sentencing court and that the court alone was responsible for determining the applicable sentencing range, whether there was any basis to depart from that range, and what sentence to impose.

The pre-sentence report (PSR) was prepared on July 2, 2007.  The probation officer used the 2006 version of the Sentencing Guideline Manual, but stated that the 2002 and 2006 editions produced the same offense level computations.  The PSR included a two-level upward adjustment under Guidelines § 3B1.3 for abuse of a position of trust that was not stipulated in the plea agreement.  The probation officer applied the abuse-of-trust enhancement, reasoning that Huff used his position at the insurance company to obtain customers' private information and then misused that data to open credit lines.  The PSR also included two additional two-level upward adjustments that were not stipulated: an adjustment under Guidelines § 2B1(b)(2)(A) for more than ten victims and an adjustment under Guidelines § 3B1.4 for the use of a minor.  The PSR stated an adjusted offense level of 28 with a net offense level of 25 after acceptance of responsibility.  The PSR calculated Huff's criminal history score at four points, resulting in a Criminal History Category of III.  The criminal history score was based on two prior offenses.  The first offense was forgery theft, for which the plaintiff was arrested on May 14, 2003.  The second offense was attempted misuse of a credit card.  The second offense occurred in July 2003, and the defendant was arrested on October 31, 2003.  Huff had pleaded guilty to both offenses on January 5, 2004 and was sentenced for both offenses on February 10, 2004.  The resulting sentencing range was 70 to 87 months.

Huff's attorney filed a sentencing memorandum objecting to the Criminal History Category contained in the PSR.  He argued that the sentences for his two prior offenses

ran concurrently with one another, and therefore should only be counted once. He also objected to the calculation of the offense level in the PSR and the application of the three two-level upward adjustments.

At the sentencing hearing, the prosecutor stated that the abuse-of-trust enhancement was not included in the plea agreement because the government believed that although the defendant held a supervisory position at the insurance company, his position did not add to his ability to commit the crimes. The district court asked the probation officer to comment on his application of that enhancement, and the probation officer indicated that he had used application note 2B, which states that the guideline applies to a "defendant who exceeds or abuses the authority of his or her position in order to obtain unlawfully or use without authority any means of identification." That language was in the 2006 Guidelines Manual, but not the 2002 version. The district court found that "based upon the rationale provided by the probation officer here in open court it's clear the defendant did abuse a position of trust based upon his position as a supervisor in the Call Center of the . . . [i]nsurance [c]ompany" and applied the abuse-of-trust enhancement. The district court sentenced the defendant to concurrent 60-month prison terms on all counts, to be followed by three years of supervised release.

After sentencing, Huff's trial counsel withdrew and Donald J. Malarcik was appointed as appellate counsel. Malarcik filed a timely notice of appeal, and raised three issues in the appellant's brief: (1) Huff's criminal history category was incorrectly calculated; (2) the upward adjustment for abuse of a position of trust was improper; and (3) the district court failed to state its reasons for the defendant's sentence with sufficient clarity to permit appellate review.

Huff averred in a declaration that after the government filed its response brief, Malarcik contacted him and told him that if he prevailed on appeal, his case would be remanded for re-sentencing by the district court. Malarcik allegedly explained that in his experience, the district court judge was unhappy when he was reversed and would express that unhappiness by imposing a sentence substantially greater than that originally imposed. Huff says that Malarcik strongly advised him to dismiss his appeal

to avoid that prospect.  Huff discussed the matter with his wife, Jamila Huff.  Jamila also filed a declaration in which she avers that Malarcik told her that Huff had a "50-50 shot" that the district court would give the defendant a longer sentence.  Huff says that he reasoned that the risk of punitive re-sentencing was too great and authorized Malarcik to dismiss the appeal.  But he also insists that Malarcik never told him that the law prohibited a district court from increasing a sentence on remand as punishment for a successful appeal or that the appellate court could issue a remand that limited the re-sentencing to the issues raised on appeal.

On December 1, 2008, Mr. Malarcik filed a motion for voluntary dismissal of the appeal, which was granted two days later.

On January 30, 2009, Huff filed a motion to vacate his sentence under 28 U.S.C. § 2255, which he amended twice.  The second amended motion was accompanied by declarations by Huff and his wife.  The government responded on May 20, 2010, but did not include any affidavit or statement from Mr. Malarcik.  The district court denied and dismissed the defendant's motion to vacate on July 14, 2010 without conducting an evidentiary hearing.  The district court made four findings on its way to its conclusion that Huff failed to allege sufficient facts to entitle him to relief or a hearing on his claim. *First*, the district court found that the claim that the district court incorrectly calculated the defendant's criminal history score was not cognizable on collateral review because the defendant had not shown that the alleged mistakes constituted errors so egregious as to amount to a violation of due process or that the errors had a substantial, injurious effect on the proceedings.  *Second*, the district court held that the defendant's claims were either procedurally defaulted or precluded by the voluntary dismissal of his appeal because the defendant did not show cause excusing his default and demonstrate prejudice. *Third*, the district court concluded that the defendant's claims lacked merit. With respect to the defendant's argument that the government breached the plea agreement, the district court found that the government "merely illustrated that an enhancement was warranted where a defendant abuses his or her position of trust, as was the case here," and characterized the commentary to the 2006 Guidelines as illustrative.

The district court also held that the application of that commentary did not result in *ex post facto* punishment.

*Fourth*, the district court found that the defendant had not demonstrated that his appellate counsel rendered ineffective assistance. The court did not find credible the defendant's allegations that his appellate counsel told him that the district court would vindictively increase the defendant's sentence should he prevail on appeal. The court pointed out that appellate counsel had been practicing several years without any disciplinary actions, and emphasized that the defendant admitted that he consented to the dismissal after a discussion with his attorney. The court believed that the defendant's attorney was entitled to a strong presumption that he provided effective assistance. The court also determined that the decision to dismiss the appeal could be considered sound strategy.

The district court denied a certificate of appealability. However, this court granted one following Huff's timely appeal.

## II.

We give fresh review to the district court's denial of a motion under section 2255, except for the factual findings, which we review for clear error. *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003). The same approach applies to our consideration of alleged errors in the application of the Sentencing Guidelines, reviewing legal conclusions *de novo* and findings of fact for clear error. *United States v. Kaminski*, 501 F.3d 655, 665 (6th Cir. 2007).

In his original appeal — which he dismissed — Huff raised three allegations of error that, he contended, rendered his sentence improper: (1) the application of the abuse-of-trust enhancement, as construed in the 2006 version of the Sentencing Guidelines Manual, was a violation of the *Ex Post Facto* Clause; (2) the district court incorrectly scored his criminal history; and (3) the government breached the plea agreement by arguing that the application of the abuse-of-trust enhancement was not clearly erroneous. He attempts to advance those same claims here, contending that his

decision to dismiss the earlier appeal was based on bad advice from his appellate lawyer. The government argues that the claims are foreclosed by the dismissal of the prior appeal, and Huff has failed to offer a credible claim that his lawyer misled him.

The government is correct on one point. Generally, when a defendant fails to raise an issue at sentencing or on direct appeal, that issue is waived. *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). However, a defendant may pursue waived claims through a collateral attack under section 2255 when he can demonstrate cause and prejudice to excuse his default. *Ibid*. "Ineffective assistance of counsel can constitute cause for a procedural default." *Hodges v. Colson*, 711 F.3d 589, 602 (6th Cir. 2013). Claims of ineffective assistance of counsel are properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421–22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).

The familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). That standard applies to claims of ineffective assistance of appellate counsel raised in a motion under section 2255. *Ballard v. United States*, 400 F.3d 404, 407 (6th Cir. 2005); *see also Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (holding that the right to effective assistance of counsel includes the right to effective assistance of appellate counsel). To show a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

*Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

Huff argues that he dismissed his first appeal because he relied on advice from his appellate attorney that was fatally flawed. He says that the discussion of the risk of facing a possibly vindictive sentencing judge who was upset by a reversal should have been tempered by an explanation of the ameliorating features of appellate law. Those, of course, would have included the well-established rule that a sentencing judge may not impose a harsher sentence after a successful appeal to punish the defendant's success, *see North Carolina v. Pearce*, 395 U.S. 711, 725 (1969); *see also United States v. Godwin*, 457 U.S. 368, 374 (1982) (recognizing a "presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence"), and the appellate court's authority to limit the district court's decision on remand, *see United States v. Garcia-Robles*, 640 F.3d 159, 166 (6th Cir. 2011); *United States v. Stout*, 599 F.3d 549, 555–56 (6th Cir. 2010).

The government does not dispute that the advice would have amounted to defective performance. Instead, the government points to Huff's acknowledgment that he met with Mr. Malarcik, discussed the pros and cons of his appeal, and made a strategic decision to dismiss it. The government contends that it simply is not credible that an appellate attorney of Mr. Malarcik's experience (nineteen years) would have given the advice that Huff describes. That is the basis upon which the trial court denied the 2255 motion as well.

The problem with that position is that there is no evidence in the record to support it. The trial court did not conduct an evidentiary hearing, and Malarcik has not provided any explanation of the decision to dismiss the defendant's appeal, despite the fact that the government advised him of Huff's motion and offered him an opportunity to submit an affidavit over three years ago. Under these circumstances, the district court's conclusion, without analysis, that the decision to dismiss the appeal could be considered sound strategy does not hold up. It is true that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound . . . strategy." *Strickland*, 466 U.S. at 689. But it is extremely difficult to understand how the voluntary dismissal of the defendant's appeal could be considered sound strategy, especially where, as discussed below, at least one of the defendant's arguments on appeal was potentially viable. The government has not, for example, suggested that the district court committed an error in the defendant's favor that the district court would have been required to correct on remand.

Both the government's argument and the district court's opinion are based on the conclusion that Huff's factual allegations in his uncontradicted affidavit are not credible. "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (citations omitted). Although no hearing is required where "the record conclusively shows that the petitioner is entitled to no relief," *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999), and a "full blown evidentiary hearing" is not required in every case, *Smith v. United States*, 348 F.3d 545, 550–51 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.1993)), "[w]here there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims," *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999) (citing *Paprocki v. Foltz*, 869 F.2d 281, 287 (6th Cir. 1989)). We have held that where "the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts,'" no hearing is necessary. *Arredondo*, 178 F.3d at 782 (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). But when a defendant presents an affidavit containing "a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'" and the government offers nothing more than "contrary representations" to contradict it, the defendant is entitled to an evidentiary hearing. *Valentine*, 488 F.3d at 334. A decision not to hold an evidentiary hearing on a motion for relief under 28 U.S.C. § 2255 is reviewed for abuse of discretion. *Id*. at 333.

Huff's claims in this case are not contradicted by the record and they are based on factual allegations, rather than legal conclusions. Huff's affidavit does not contain "mere assertion[s] of innocence"; instead, it contains a narrative of the defendant's dealings with his appellate counsel. *Id*. at 333. The government and the district court apparently found them inherently incredible, but we do not find support for that conclusion in the record. The district court pointed to Mr. Malarcik's nineteen year career and lack of disciplinary proceedings. Certainly, appellate counsel's experience is one factor to be considered in determining whether he was ineffective; but the fact that an attorney has had a long career does not render "inherently incredible" the claim that the attorney might give erroneous legal advice. And in the absence of any explanation by Mr. Malarcik, there is nothing in the record that "conclusively shows" that the attorney's performance was not defective under prevailing professional norms. The district court abused its discretion when it did not conduct an evidentiary hearing.

The failure to hold an evidentiary hearing would be of no import if the alleged defective performance were inconsequential. "Even when trial counsel's performance is deficient under prevailing standards, we grant relief only if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694). We therefore turn to Huff's claims of sentencing error, and we find that at least one has merit.

Huff contends that the application of an abuse-of-trust enhancement under Sentencing Guidelines § 3B1.3 was a violation of the *Ex Post Facto* Clause because it was based on an application note in the commentary to that section that was not included in the version of the Guidelines in effect at the time of his offense. He says that the amendment, which became effective on November 1, 2005, brought him within the scope of the enhancement, which would not have been applicable to him under the 2002 version of the Guidelines. The government responds that the amendment was clarifying, rather than substantive, and in any event, the application of the enhancement to Huff was not clearly erroneous.

Generally, a district court applies the version of the Guidelines in effect at the time of sentencing. *United States v. Welch*, 689 F.3d 529, 532 (6th Cir. 2012). However, this past term, the Supreme Court held that a violation of the *Ex Post Facto* Clause occurs "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines range than the version in place at the time of the offense." *Peugh v. United States*, --- U.S. ---, 133 S. Ct. 2072, 2078 (2013). That decision is consistent with Sixth Circuit law on that point. *See United States v. Lanham*, 617 F.3d 873, 889–90 (6th Cir. 2010). If the defendant's sentencing range is greater under the Guidelines in effect on the date of sentencing, the district court must apply the Guidelines in effect at the time of the offense to avoid an *ex post facto* violation. *Welch*, 689 F.3d at 533.

We have held, however, that "clarifying amendments may be applied retroactively to discern the Sentencing Commission's intent regarding the application of a pre-amendment guideline." *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007) (citations omitted). "An amendment is clarifying if it changes nothing concerning the legal effect of the guidelines, but merely clarifies what the Commission deems the guidelines to have already meant." *Ibid.* (internal citation and quotation marks omitted). But if the amendment can actually constitute "[a] retrospective increase in the Guidelines range applicable to a defendant," *Peugh*, 133 S. Ct. at 2085, rather than a further explanation of the Guidelines range that always was applicable to a defendant, it is substantive and, in light of *Peugh*, would violate the *Ex Post Facto* Clause. To determine whether an amendment is substantive or clarifying, this Court considers three factors: "'(1) how the Sentencing Commission characterized the amendment; (2) whether the amendment changes the language of the guideline itself or changes only the commentary for the guideline; and (3) whether the amendment resolves an ambiguity in the original wording of the guideline.'" *United States v. Monus*, 356 F.3d 714, 718 (6th Cir. 2004) (quoting *United States v. Hartz*, 296 F.3d 595, 599 (7th Cir. 2002)).

The second factor favors the conclusion that the amendment was clarifying, as it changed only the language of the comment and not the text of the Guideline provision. However, the other two factors strongly suggest the opposite conclusion. The Sentencing Commission did not characterize the amendment as a clarifying amendment. Instead, it stated that the amendment "implements sections 2 and 5 of the Identity Theft Penalty Enhancement Act . . . which . . . direct the Sentencing Commission to expand the upward adjustment at § 3B1.3 (Abuse of Position of Trust or Use of Special Skill)." U.S. Sentencing Guidelines Manual app. C at 142 (2012). Specifically addressing the application note challenged by the defendant, the Sentencing Commission indicated that the note was added "in response to the directive in section 5 to amend" the abuse-of-trust Guideline "to include [a defendant who exceeds or abuses the authority of his or her position in order to obtain unlawfully or use without authority any means of identification] within the scope of the guideline." *Id.* at 143. That language clearly suggests that an identity theft defendant would not have been within the scope of the guideline before the amendment. There is no language by the Sentencing Commission indicating that the amendment was intended to resolve an ambiguity in the guideline language. Instead, the purpose of the amendment plainly was to bring new defendants and conduct within the scope of the enhancement. Such an amendment can hardly be considered merely "clarifying."

In this case, the Probation Department used the 2006 version of the Guidelines, including the 2005 amendment, in calculating Huff's offense level. Moreover, in applying the enhancement, the district court relied on the probation officer's comments during the sentencing hearing, in which the probation officer quoted the 2005 amendment language. The application of the abuse-of-trust enhancement increased the defendant's offense level by two levels, from a total offense level of 23 to an offense level of 25. All other things being equal, the application of the abuse-of-trust enhancement increased the defendant's guideline range from 53 to 71 months to 70 to 87 months, a substantial increase. The amendment made the abuse-of-trust enhancement applicable to Huff on the day of his sentencing and increased his offense level — and the corresponding guideline range — over that which would have applied when he

committed the crimes. "Such a retrospective increase in the measure of punishment raises clear *ex post facto* concerns." *Peugh*, 133 S. Ct. at 2085.

An *ex post facto* error may be harmless, *see id.* at 2088 n.8, so we must consider two more points. *First*, the sentence actually imposed fell within the lower guideline range. However, a miscalculation of the range renders the sentence procedurally unreasonable. *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) (citing *United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006). We will not speculate on what sentence the district court would have imposed had it correctly calculated the defendant's offense level. *Welch*, 689 F.3d at 534.

*Second*, the government appears to argue, although it is not entirely clear, that the abuse-of-trust enhancement was appropriate because the district court determined that Huff abused his position of trust. But that determination quite clearly was based on the 2006 amendment to the commentary. At sentencing, the district court relied on the probation officer's comments, in which the officer quoted the 2006 amendment language; in its memorandum opinion denying the defendant's 2255 motion, the district court acknowledged that it "employed a two-level upward adjustment pursuant to the Commentary to Section 3B1.3 of the 2006 Edition, which did not appear in the 2002 Edition." R. 108 Memorandum Opinion at 8. The *ex post facto* error here cannot be considered harmless.

Huff raises other sentencing errors as well, but we do not find them persuasive. The district court did not mis-score Huff's criminal history. The two crimes properly were counted separately because there was an intervening arrest. *See* U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) & cmt. app. note (2002). Nor did the prosecutor breach the plea agreement by defending the sentence on appeal. The fact that the government agreed to a sentencing adjustment before the district court does not mean that the government is estopped from arguing on appeal that the district court did not err in declining to award the adjustment. *United States v. Rodriguez-Castro*, 641 F.3d 1189, 1192 (9th Cir. 2011); *see also United States v. Thornberg*, 326 F.3d 1023, 1025 n.3 (8th Cir. 2003); *United States v. Nathan*, 188 F.3d 190, 213 n.11 (3d Cir. 1999).

However, because of the *ex post facto* error, there is a substantial likelihood that had the defendant not dismissed his appeal, the outcome would have been different. That satisfies the prejudice prong of the *Strickland* inquiry.

### III.

We must conclude that Huff's allegations of defective performance by his appellate lawyer are not inherently incredible, nor are they contradicted by the record. Because there is nothing in the record that "conclusively shows" that Huff's ineffective assistance claim lacks merit, and because Huff has demonstrated prejudice, we must remand the case to the district court for an evidentiary hearing on whether appellate counsel rendered ineffective assistance. Therefore, the district court's order denying Huff's motion under 28 U.S.C. § 2255 is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.