<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0568n.06

Case No. 18-1297

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 13, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| RICHARD DEAN WOOLSEY, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| UNITED STATES OF AMERICA, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE: SUTTON, COOK, and THAPAR, Circuit Judges.

COOK, Circuit Judge. After rejecting a plea discussed at a status conference of a sentencing range of 33 to 41 months, a jury convicted Richard Dean Woolsey of mail and wire fraud, resulting in a sentence of 90 months in prison. Woolsey later came to believe from a post-incarceration review of his counsel's file that his lawyer thought—but never told him—that the government's planned presentation at sentencing might lead to a 27-to-33-month sentence. On the strength of this disclosure in the file, Woolsey moved to vacate his sentence for ineffective assistance. Because the district court properly found an absence of evidence to support his argument regarding a sentencing scenario kept from him by his lawyer, we AFFIRM the denial of Woolsey's motion.

**I.**

The government charged Woolsey with Conspiracy to Commit Mail and Wire Fraud and Aiding and Abetting Wire Fraud for a fraudulent vacation-property-purchasing scheme he pursued. *United States v. Woolsey*, 638 F. App'x 479 (6th Cir. 2016). Court-appointed counsel Edward Wishnow met with prosecutor Karen Reynolds on behalf of Woolsey to explore potential plea scenarios. That discussion centered on various sentencing ranges, depending on the amount of loss the court determined to have been caused by Woolsey's fraud. Wishnow took notes as he and Reynolds talked. It is those notes that include the numbers "27-33"—a line that led Woolsey to surmise that the government had privately offered to allow Woolsey to plead to that range, but Wishnow never told him.

What he *did* know from attending a status conference four days later was that the government offered to allow Woolsey to plead to conduct "confined to the four corners of the indictment." When Judge Cohn asked about the corresponding sentencing range, Reynolds responded, "Mr. Wishnow and I talked about that last week. I thought it was 33 to 41 months. He thinks it's -- " and the court cut her off. Observing the significant difference between 33 to 41 months and the statutory maximum of seven years, Judge Cohn asked Woolsey if he understood the consequences of rejecting a plea. Woolsey replied, "I do."

After Woolsey requested a new attorney, the court permitted Wishnow to withdraw, and appointed new counsel who took the case to trial some seven months later. The jury convicted Woolsey, and with a downward departure on the guidelines range of 97 to 121 months the court sentenced him to 90 months.

Some years later, after requesting and receiving Wishnow's file notes, Woolsey moved to vacate his sentence claiming an ineffective assistance, grounded on Wishnow never having told him about a 27-to-33-month sentencing scenario. With his file Wishnow sent a cover letter:

> These notes reflect plea offers for potential plea scenarios depending on amount of loss. One scenario had a loss of more than $400,000 but less than one million, which would carry a potential sentence on a plea of guilty of 27 to 33 months.

> The other scenario had a loss of more than one million, which carried a potential sentence on a plea of guilty of 33 to 41 months.

> The other scenario was potential sentencing implications if you went to trial with a loss of greater than 7 million, which results in a potential guideline range of 87 to 108 months.

The district court denied Woolsey's motion to vacate, declining to hold a hearing, premising denial on: (1) the 2012 status conference, at which Woolsey stated he understood the consequences of rejecting the offered plea; and (2) Wishnow's "detailed notes about the plea offers discussed with government[.]"  We granted a certificate of appealability.

## II.

Though we review a district court's denial of a Section 2255 motion de novo, we will overturn its factual findings only if clearly erroneous. *Huff v. United States*, 734 F.3d 600, 605 (6th Cir. 2013); *see also Goward v. United States*, 569 F. App'x 408, 410 (6th Cir. 2014). "The ultimate question of whether a defendant received ineffective assistance of counsel is a mixed question of law and fact, which we also review de novo." *Logan v. United States,* 910 F.3d 864, 868 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1589 (2019).

We review a district court's denial of an evidentiary hearing on a Section 2255 motion for abuse of discretion. *Martin v. United States*, 889 F.3d 827, 831 (6th Cir. 2018).

**III.**

To prevail on an ineffective assistance of counsel claim, a defendant must show: (1) that counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the poor performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

**A. Deficient Performance**

We measure deficient performance "against an objective standard of reasonableness under prevailing professional norms." *Logan,* 910 F.3d at 869 (quoting *Rompilla v. Beard*, 545 U.S. 374, 380 (2005)).

Woolsey contends that Wishnow believed—but never told him—that his sentencing exposure from a guilty plea would be 27 to 33 months with conduct "limited to the four corners of the indictment" and the sentence to be decided by the court. Reynolds's truncated statement that "I thought [the sentencing range would be] 33 to 41 months. [Wishnow] thinks it's -- " supposedly shows that multiple sentencing scenarios remained in play. Specifically, according to Woolsey, Reynolds envisioned a 33-to-41-month sentence if she convinced the district court that Woolsey caused $1 million to $7 million in monetary loss, while Wishnow predicted 27 to 33 months upon convincing the court that Woolsey caused only $400,000 to $1 million in loss. But because Wishnow never reviewed the possibility of a 27-to-33-month sentence with him, Woolsey argues, he could not make an informed judgment regarding whether to enter a plea—meaning Wishnow performed deficiently.

Woolsey's take on events runs into several problems. First, he speculates about Wishnow's sentencing view and Wishnow's silence at the status conference casts doubt on this interpretation. Neither Wishnow's notes nor anything else in the record substantiates this theory.

While Wishnow may have harbored a vision that he could persuade the court to sentence at the 27-to-33-month range, no court has yet imposed a constitutional duty for a lawyer to review such hoped-for ranges. Nor has any court found that an attorney who did *not* "f[e]ll below an objective standard of reasonableness" for competent counsel. *Strickland*, 466 U.S. at 688. Woolsey's novel theory would expand the Sixth Amendment's reach far beyond its present scope, that is counsel must inform clients of formal plea offers, *Missouri v. Frye*, 566 U.S. 134, 145 (2012), and provide effective assistance to help clients decide whether to accept, *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). This includes accurately explaining the likely sentencing range if the defendant declines to plead guilty. *See Miller v. United States*, 561 F. App'x 485, 495 (6th Cir. 2014) (remanding for evidentiary hearing where client declined plea following erroneous advice that client was not subject to mandatory minimum sentence); *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) (same where counsel failed to "inform[ his client] of the dramatically higher sentence potential" of going to trial). But it does not require an attorney, having discussed multiple sentencing scenarios, to explain to the client which scenario he hopes will result. Finding deficient performance here would constitutionalize such a duty; we will not so find.

Besides, Woolsey's briefing painted a different picture of the case. His submissions allege that, at the October 2012 meeting, Reynolds offered two plea options, and that Wishnow provided constitutionally inadequate performance by telling him about only one. Analogizing to *Frye*, Woolsey argues that he and Galin Frye both received formal plea offers from the government, and that his counsel, like Frye's, failed to inform him of that offer.

The government does not disagree on the law, only the facts. According to the government's brief, Reynolds only ever offered Woolsey one plea, as shown by: (1) Reynolds's statement at the October 2012 status conference mentioning only the 33-to-41-month range and

Wishnow's ensuing silence; (2) a November 2016 letter from Wishnow to Woolsey stating that the status conference transcript provides "the best source of the Government's plea *offer*"; and (3) the August 2016 cover letter from Wishnow to Woolsey accompanying Wishnow's case files. In the August letter, Wishnow explains that he and Reynolds discussed "plea offers for potential plea scenarios depending on amount of loss." The government keys on the words "potential" and "scenarios," arguing that these evince the reality—preliminary discussions.

Woolsey posits, however, that two options were on the table at the meeting. He points to two sources of circumstantial evidence: Wishnow's notes and his use of the "offers" in the accompanying letter. Neither supports Woolsey's stance.

Pointing to Wishnow's notes, Woolsey maintains that Wishnow having neither "circled, starred, [n]or otherwise set apart [the 33-to-41-month plea] as *the one* offer coming out of the meeting" shows that Reynolds offered both a higher and lower plea number. Again, Woolsey speculates. Because he bears the burden of establishing Wishnow's deficient performance, *United States v. Dubrule*, 822 F.3d 866, 881 (6th Cir. 2016), Woolsey's unsupported assertion fails to carry the point.

Woolsey also seizes on the phrase "plea *offers*" in Wishnow's cover letter as demonstrating that Reynolds communicated multiple offers to Wishnow. But the wording of that letter—sent nearly four years after Wishnow and Reynolds met—also labelled them "plea scenarios," dependent on loss amounts. *Cf. United States v. Strother*, 509 F. App'x 571, 575 (8th Cir. 2013) (ruling that attorney's statement, made nearly three years after plea bargaining, "that he 'kept [the defendant] advised of all negotiations and relayed all plea *offers*'" did not support allegation of second plea offer never conveyed by counsel (emphasis added)). Besides, the transcript of the status conference held just four days after the meeting supports the government's account. When

the district court asked about plea negotiations, Reynolds mentioned only a 33-to-41-month range. Wishnow neither corrected her nor mentioned a 27-to-33-month scenario.

The government labels Woolsey's supposition as "illogical" and analogizes to a car dealer offering to sell a vehicle for either $10,000 or $8,000, whichever the buyer prefers. Woolsey submits his own analogy: two offers to sell a car "for either $10,000 or $8,000, depending on the outcome of an independent appraisal." True, the prosecution in *Frye* offered "a choice of two plea bargains": three years in prison, with all but ten days deferred, on a felony charge; or 90 days in prison for a misdemeanor. 566 U.S. at 138–39. But Woolsey's theory includes no additional feature or aspect that would equate to the trade-off in *Frye*—months in prison offset by a less onerous criminal record.

According to Woolsey, in opposing his motion to vacate, the government conceded that Reynolds offered multiple pleas. He repeatedly quotes a passage in the government's brief: "Attorney Edward Wishnow who represented Woolsey at the time, has detailed notes about the plea *offers* discussed with government." Woolsey sees this as an admission that the government offered multiple pleas. But context matters. The quoted sentence appears at the end of a paragraph about the 33-to-41-month scenario and follows the statement that "a plea *offer* had been made." To warrant recognition the admission must be "deliberate" or "clear." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007); *see also Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 198 (3d Cir. 2019) (explaining that "an admission must be unequivocal to be binding" (citation and quotation marks omitted)). This admission was neither.

Woolsey alternatively contends that, by not raising it below, the government waived its argument that Reynolds offered only one plea. The government, however, advanced the same

argument in the district court as it does here: that, as shown by her statement at the status conference, Reynolds offered only a 33-to-41-month plea.

Woolsey also argues that this court's order granting him a certificate of appealability ("COA") acknowledged two plea offers. Sure, the order stated, "[T]he record does show that [the 27-to-33-month] offer was made, as demonstrated by Wishnow's letter to Woolsey[.]" But in analyzing a request for a COA, this court considers only "whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). In this case, as in all COA decisions, we did so without "full consideration of the factual or legal bases adduced in support of the claims." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Arguing that the government made at least a *tentative* second plea offer, Woolsey presses for habeas relief even if Reynolds merely mentioned but did not formally offer the 27-to-33-month scenario. He points first to the Michigan Rules of Professional Conduct, arguing that Wishnow's failure to keep him apprised of ongoing negotiations violated those rules and amounted to ineffective assistance. But even if Wishnow's conduct was professionally questionable (and we don't mean to imply it was) not every ethical violation equates to the constitutional violation of ineffective assistance of counsel. *See Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *accord Fox v. Hurley*, 149 F. App'x 333, 340 (6th Cir. 2005) (explaining that ethically questionable conversation by defense counsel "does not compel a finding that [defendant] received the ineffective assistance of counsel"). Woolsey next relies on *Griffin v. United States*, which reversed the denial of a habeas claim where the petitioner alleged that he would have accepted the government's "tentative" and "contingent" plea offer had his counsel conveyed it. 330 F.3d 733, 738–39 (6th Cir. 2003). But

*Griffin* does not go as far as Woolsey would like. There, the government conceded that it made "at least a tentative plea offer," and that only prejudice—rather than the type of offer—was at issue. *Id.* at 738. *Cf. Wright v. Spaulding*, 939 F.3d 695, 702 (6th Cir. 2019) (explaining that "questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents"). And while the "contingent" plea offer was available for Phillip Griffin to accept, *Griffin*, 330 F.3d at 738, Woolsey provides no evidence that the alleged 27-to-33-month scenario reached that stage. In any event, the *Griffin* court did not grant the petitioner's motion; it instead reversed for an evidentiary hearing. *Id.* at 739.

For these reasons, we agree with the district court that Woolsey falls short of showing constitutionally deficient performance. We thus affirm the district court's denial of his Section 2255 motion.

### B. Evidentiary Hearing

A petitioner bears the burden of "show[ing] his right to a hearing," *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007), but that burden "is relatively light," *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). *See also Valentine*, 488 F.3d at 334 (describing petitioner's burden as "significantly lower than his burden to show he is entitled to § 2255 relief"). Ordinarily, a habeas court must hold a hearing when a factual dispute underlies a petitioner's claim for relief. *Clark v. Warden*, 934 F.3d 483, 494 (6th Cir. 2019) (citing *Huff*, 734 F.3d at 607). "[W]hen presented with factual allegations, 'a district court may only [forgo] a hearing where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Martin*, 889 F.3d at 832 (quoting *MacLloyd v. United States*, 684 Fed. App'x 555, 559 (6th Cir. 2017)).

Woolsey contends that his affidavit creates a factual dispute regarding the nature and number of the plea(s) offered to him. He relies primarily on Wishnow's cover letter referencing "plea offers," and then adds his opinion: "Nothing about that evidence or Mr. Woolsey's claim is 'inherently incredible.'" This dispute, he argues, entitles him to an evidentiary hearing.

For the reasons discussed above, Woolsey is wrong. His allegations are "contradicted by the record," given Reynolds's status conference statement identifying only the 33-to-41-month range and Wishnow's ensuing silence. And they are "inherently incredible" because logic precludes simultaneously offering two pleas, one clearly more favorable than the other. Even if Woolsey could establish that Wishnow hoped the government's "four corners" offer would lead to a 27-to-33-month sentence, that showing would not warrant habeas relief. Though the burden of establishing entitlement to an evidentiary hearing "is relatively light," *Turner*, 183 F.3d at 477, Woolsey fails to carry it. For these reasons, we uphold the district court's denial of an evidentiary hearing on Woolsey's Section 2255 motion.

**IV.**

We AFFIRM.